

# IN THE
# TENTH COURT OF APPEALS

### No. 10-06-00332-CR

**HECTOR RENE GALVEZ,**

                                                            **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                            **Appellee**

---

**From the 54th District Court
McLennan County, Texas
Trial Court No. 2005-1483-C**

---

## OPINION ON REMAND

---

A jury convicted Hector Rene Galvez of aggravated sexual assault and the trial court sentenced him to life in prison. On appeal, Galvez challenges the: (1) denial of his challenges for cause; (2) admission of extraneous-offense evidence; (3) exclusion of testimony regarding his interview with police; and (4) admission of testimony regarding a photographic lineup. We affirm.

On original submission, a majority found that the extraneous offenses were erroneously admitted, reversed the conviction, and remanded the case to the trial court.

*See Galvez v. State*, No. 10-06-00332-CR, 2008 Tex. App. LEXIS 1562 (Tex. App.—Waco Feb. 27, 2008, pet. granted) (not designated for publication). The Court of Criminal Appeals remanded the case for reconsideration in light of its opinion in *Bass v. State*, 270 S.W.3d 557 (Tex. Crim. App. 2008). *See Galvez v. State*, No. PD-0544-08, 2008 Tex. Crim. App. Unpub. LEXIS 931 (Tex. Crim. App. Dec. 17, 2008).[1]

## CHALLENGES FOR CAUSE

In issue one, Galvez complains of the denial of his challenges for cause to three members of the jury panel.

The trial court denied Galvez's challenges for cause against five venire members. Galvez exercised peremptory strikes on these venire members. He explained that he would have used those strikes on other jurors and requested five additional strikes. The trial court denied this request. After the jury was sworn, Galvez identified by name three jurors whom he would have struck had he received additional strikes. The State contends that, by waiting until after the jury was sworn to identify three objectionable jurors, Galvez has failed to preserve this issue for appellate review.

To preserve error on denied challenges for cause, Galvez must show that: (1) he asserted a clear and specific challenge for cause; (2) he used a peremptory challenge on the complained-of venireperson; (3) all his peremptory challenges were exhausted; (4) his request for additional strikes was denied; and (5) an objectionable juror sat on the jury. *Feldman v. State*, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002). Although Galvez did

---

[1] Because we addressed the underlying facts in our previous opinion, we dispense with our customary factual background. *See* TEX. R. APP. P. 47.4.

identify by name three objectionable jurors, he did not do so until after the jury was sworn. His objection was untimely and he has failed to preserve this issue for appellate review. *See Credille v. State*, 925 S.W.2d 112, 115 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) (Credille failed to "identify an objectionable juror who was seated on the panel until after the jury was sworn"); *see also McBean v. State*, 167 S.W.3d 334, 337-339 (Tex. App.—Amarillo 2004, pet. ref'd); *Muniz v. State*, No. 07-00-00117-CR, 2001 Tex. App. LEXIS 5700, at *1-3 (Tex. App.—Amarillo Aug. 14, 2001, pet. ref'd) (not designated for publication) (Error not preserved where "the identities of the purportedly objectionable venire members were not revealed to the trial court until after it had sworn in the jury.").

## EVIDENTIARY ISSUES

Galvez's three remaining issues address the admission or exclusion of evidence. We review a trial court's evidentiary rulings for abuse of discretion. *See Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007).

### Extraneous-Offense Evidence

In issue two, Galvez contends that extraneous sexual assaults testified to by D.V. and J.M. were inadmissible under Rules of Evidence 404(b) and 403 and a violation of due process.

**Rule 404(b)**

"[A] defense opening statement…opens the door to the admission of extraneous-offense evidence…to rebut the defensive theory presented in the defense opening statement." *Bass*, 270 S.W.3d at 563. There are no "categorical distinctions between

'fabrication' defenses and 'frame-up' or 'retaliation' defenses." *Id*. The issue turns on "whether the extraneous-offense evidence has noncharacter-conformity relevance by, for example, rebutting a defensive theory or making less probable defensive evidence that undermines an elemental fact." *Id*. at 563 n.8.

During voir dire, Galvez posed the following questions to the jury panel:

The first thing I want to know about is your response or your feelings to this statement. Here's a statement: No one would deliberately lie in accusing someone else of committing a serious crime.

…would somebody make up a lie about somebody else regarding a serious matter?

I'm not talking about little white lies. I'm talking about somebody raped me, okay?

Why would somebody lie about a serious matter?

…would somebody do that for revenge?

In opening statements, Galvez suggested that L.H. was a street prostitute who Galvez picked up, an argument over money ensued, Galvez assaulted her because she would not leave, and L.H. was upset. He argued that L.H. fabricated allegations of sexual assault because she was angry over money and Galvez "rough[ed] her up," wanted revenge, and realized that "a simple assault charge is not enough and she wants him to pay so she spins the yarn."

On cross-examination of L.H., Galvez asked:

But you had the presence of mind, you say when you got out of the car to try to grab the nipple ring so you could get some blood for a DNA match and grab this toy gun so you could get fingerprints or whatever. And yet, when you got to the hospital you didn't tell them about being raped or sex?

And then five days later you went back to Hillcrest, right?

And, of course, by this time there would be no physical evidence on you such as semen to prove that there had even been sex, correct?

Well, you had the presence of mind to try to take the gun and grab the nipple [ring] off and get DNA evidence and blood evidence. So it sounds like you were trying to build a case against Mr. Galvez, correct?

Galvez questioned L.H. about walking around at night in a neighborhood known for prostitution and drugs and asked whether she was a prostitute.

Galvez opened the door to admission of the extraneous-offense evidence to rebut the defensive theory of fabrication. He essentially argued that L.H. fabricated the story out of anger and revenge because of a dispute over money and/or because Galvez assaulted her. It is "at least subject to reasonable disagreement whether the extraneous-offense evidence was admissible for the noncharacter-conformity purpose of rebutting [Galvez's] defensive theory that the complainant fabricated her allegations against him" and made this defensive theory less probable. *Bass*, 270 S.W.3d at 563.

Galvez contends that the evidence is inadmissible under Rule 404(b) because: (1) the offenses are not sufficiently similar to the charged offense; and (2) D.V. and J.M., like L.H., had the same motive to lie, *i.e.*, anger over being assaulted.

"[E]xtraneous misconduct must be at least similar to the charged one and an instance in which the 'frame-up' motive does not apply." *Wheeler v. State*, 67 S.W.3d 879, 888 n.22 (Tex. Crim. App. 2002). The degree of similarity required to rebut a defensive issue is not great; the extraneous offense need not be identical to the charged offense. *See Blackwell v. State,* 193 S.W.3d 1, 13 (Tex. App.—Houston [1st Dist.] 2006, pet.

ref'd); *see also Dennis v. State,* 178 S.W.3d 172, 178-79 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). Nor must the extraneous offense witness have *no* motive to lie. *See Dennis*, 178 S.W.3d at 180 (Interpreting "*Wheeler* as requiring that the extraneous offense be one for which the *complainant's* 'frame-up' motive does not apply--not that a motive to fabricate the extraneous offense be wholly absent."). "To read *Wheeler* otherwise would permit a defendant to exclude any extraneous offense evidence merely by alleging that the extraneous offense witness has some motive--one wholly unrelated to that of the complaining witness's--to lie." *Id.*

In this case, the extraneous offenses are sufficiently similar to the charged offense and, assuming the witnesses have a motive to lie, it is sufficiently different from L.H.'s alleged motive. Although L.H. was forced into the car at gunpoint and the other two women voluntarily entered the car, all three women were out walking at night when approached by a vehicle and all three were sexually assaulted in the vehicle. All three assaults occurred in a secluded area. Moreover, it is reasonable to conclude that most assault victims would feel anger towards their attacker. Nevertheless, Galvez maintained that L.H. was angry over a money dispute. The record does not indicate any such dispute associated with the other two victims nor any motive to lie.

In summary, the extraneous offenses were admissible under Rule 404(b) to rebut Galvez's defensive theory of fabrication.

**Rule 403**

Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." TEX. R. EVID. 403. We consider: (1) the

probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Prible v. State,* 175 S.W.3d 724, 733 (Tex. Crim. App. 2005).

The first factor "looks to the evidence's probativeness or how compellingly the evidence serves to make a fact of consequence more or less probable." *State v. Mechler,* 153 S.W.3d 435, 440 (Tex. Crim. App. 2005). In light of our determination that the extraneous-offense evidence was admissible to rebut Galvez's defense of fabrication, the inherent probative value of the evidence was great. *See Dudzik v. State*, 276 S.W.3d 554, 561-62 (Tex. App.—Waco 2008, pet. ref'd). This factor favors admissibility.

Under factor two, "'[u]nfair prejudice' refers only to relevant evidence's tendency to tempt the jury into finding guilt on grounds apart from proof of the offense charged." *Mechler*, 153 S.W.3d at 440. Galvez argues that the extraneous offenses "sen[t] the message that [he] was a repetitive rapist." While the offenses are no doubt prejudicial, they are not unfairly so in proportion to their probative value. Moreover, the jury received an instruction limiting their consideration of the offenses to the issue of fabrication. *See Lane v. State*, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996). This factor favors admissibility.

The "third factor looks to the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense." *Mechler*, 153 S.W.3d at 441. Galvez characterizes the length of time used to present the evidence as "three rape trials combined into one." Out of the three volumes of the guilt/innocence phase of trial, D.V.'s and J.M.'s testimony comprises a total of

approximately sixty pages of the record. Three other witnesses provided testimony regarding these extraneous offenses; their testimony totals approximately thirty pages. Photographs of the women's injuries were admitted into evidence. The State discussed the two offenses in closing arguments. Although the State spent some time developing the evidence, it was not excessive. *See Lane*, 933 S.W.2d at 520 (State spent "less then one-fifth of the testimony in the State's case-in-chief (less than one day out of five days of testimony)" developing extraneous offense). This factor favors admissibility.

The fourth factor addresses "whether the proponent has other evidence establishing this fact and whether this fact is related to a disputed issue." *Mechler*, 153 S.W.3d at 441. Galvez argues that the State could have introduced witness testimony or physical evidence to corroborate L.H.'s story. The record does not indicate that the State had such other evidence; thus, it needed this evidence to rebut Galvez's defensive theory of fabrication. *See Dudzik*, 276 S.W.3d at 561-62. This factor favors admissibility.

Because the above factors weigh in favor of admissibility, the extraneous-offense evidence was admissible under Rule 403. *See Mechler*, 153 S.W.3d at 441-42.

**Due Process**

Galvez contends that admission of the extraneous-offense evidence violates due process by "penalizing [him] for defending himself."

In light of the Court of Criminal Appeals' holding in *Bass*, on remand the Fourteenth Court concluded:

> Because the evidence was admissible to rebut appellant's contention that the complainant was fabricating and appellant was not the type of person

who would engage in such acts, admission of the evidence did not violate appellant's due process rights.

*Bass v. State*, No. 14-05-00865-CR, 2009 Tex. App. LEXIS 4736, at *3 (Tex. App.—Houston [14th Dist.] June 18, 2009, no pet. h.) (not designated for publication) (citing *Phelps v. State*, 5 S.W.3d 788, 790-92, 798 (Tex. App.—San Antonio 1999, pet. ref'd)).  We likewise hold that allowing the State to rebut the defensive theory of fabrication with extraneous-offense evidence did not violate Galvez's due process rights.  *See id.*

We overrule issue two.

## Galvez's Interview

In issue three, Galvez challenges the exclusion of testimony regarding his voluntary interview with Detective Woodruff.

During cross-examination of Woodruff, the defense asked whether she had interviewed Galvez.  She replied, "Yes."  The State objected and, outside the jury's presence, argued that testimony regarding the interview was hearsay.  After Galvez made an offer of proof, the trial court sustained the State's objection and gave the jury an instruction to disregard.  On appeal, Galvez contends that the testimony he sought to elicit was not hearsay because it was not offered for the truth of the matter asserted, but to show that: (1) he acted in conformance with innocent behavior by voluntarily meeting with Woodruff without counsel present; and (2) a thorough investigation was not conducted because Woodruff failed to follow up on Galvez's story and instead targeted him as the offender.

"Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d). "Whether the disputed testimony violates the hearsay prohibition necessarily turns on how strongly the content of the out-of-court statement can be inferred from the context." *Head v. State*, 4 S.W.3d 258, 261 (Tex. Crim. App. 1999). "[T]he question is whether the strength of the inference produces an 'inescapable conclusion' that the evidence is being offered to prove the substance of an out-of-court statement." *Id*. at 262.

As demonstrated by Galvez's offer of proof, Woodruff's testimony regarding her investigation, when taken in context, could lead to inescapable conclusions as to the substance of Galvez's out-of-court statement. *See id*. at 262. Woodruff testified that she followed up on Galvez's story by talking to the victim and going to the house where Galvez said he took L.H. on the night of the offense. Woodruff testified that other people lived in the house, so she could not inspect the mattress that Galvez had said he and L.H. used. She made no further attempt to locate the mattress. This testimony is inadmissible hearsay. *Id.* at 261.

However, the content of Galvez's statement cannot be inferred from testimony showing that he voluntarily met with Woodruff. It is not hearsay. *See Head*, 4 S.W.3d at 261. Because the trial court abused its discretion by excluding this testimony, we must now determine whether Galvez suffered harm.

When evaluating harm from non-constitutional error flowing from the exclusion of relevant evidence, we examine the record as a whole, and if we are fairly assured that

the error did not influence the jury or had but a slight effect, we conclude that the error was harmless. *Ray v. State*, 178 S.W.3d 833, 836 (Tex. Crim. App. 2005). Any error must be disregarded unless it affected Galvez's substantial rights. TEX. R. APP. P. 44.2(b).

We cannot say that Galvez's substantial rights were affected by exclusion of Woodruff's testimony. The record contains other evidence suggesting that Galvez cooperated with the investigation. Officer Jason Davis testified that Galvez did not resist when arrested. Woodruff testified that Galvez signed a consent form to allow police to search his vehicle. Accordingly, the record contains other evidence from which the jury could conclude that Galvez's actions were consistent with innocence. *See Garcia v. State*, 246 S.W.3d 121, 136-37 (Tex. App.—San Antonio 2007, pet. ref'd); *see also Grady v. State*, 962 S.W.2d 128, 131 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd). We overrule issue three.

## Photographic Lineup

In issue four, Galvez challenges the admission of Woodruff's testimony regarding how she compiled the line-up from which L.H. identified him.

When the State attempted to ask Woodruff how she developed suspects, the defense objected. Outside the jury's presence, Woodruff testified that she developed a profile based on L.H.'s description of her attacker. Woodruff testified that she had seen Galvez before and knew that he had a piercing like the one L.H. had described. She then put this information into the lineup. The defense objected to this testimony, explaining that it would imply that Woodruff had encountered Galvez in her "line of work," that he had been a suspect in some other matter, or that he had been

investigated. The trial court overruled the objection. In the jury's presence, Woodruff testified that L.H. told her that Galvez had a chin piercing and that based on L.H.'s description, she thought of Galvez and placed him in the lineup.

On appeal, Galvez contends that the evidence was irrelevant and introduced evidence of an extraneous offense. We disagree.

It is relevant and permissible for an officer to testify that "she was acting in response to 'information received.'" *Schaffer v. State*, 777 S.W.2d 111, 114 (Tex. Crim. App. 1989); *Kimball v. State*, 24 S.W.3d 555, 564 (Tex. App.—Waco 2000, no pet.). Police officers may testify to explain how the investigation began and how the defendant became a suspect. *Lee v. State*, 29 S.W.3d 570, 577 (Tex. App.—Dallas 2000, no pet.). Woodruff's testimony was relevant to explain how Galvez became a suspect. *See Mata v. State*, No. 05-05-00504-CR, 2007 Tex. App. LEXIS 2319, at *15 (Tex. App.—Dallas Mar. 26, 2007, pet. ref'd) (not designated for publication) (Presence of the defendant's DNA profile on CODIS was relevant to show how he became the focus of the investigation).

Moreover, "to constitute an improper reference to an extraneous offense, 'the evidence must show a crime or bad act, and that the defendant was connected to it.'" *Holmes v. State*, 962 S.W.2d 663, 672 (Tex. App.—Waco 1998, pet. ref'd) (quoting *Lockhart v. State*, 847 S.W.2d 568, 573 (Tex. Crim. App. 1992)). If the evidence fails to show that an offense was committed or that the accused was connected to the offense, then evidence of an extraneous offense is not established. *McKay v. State*, 707 S.W.2d 23, 32 (Tex. Crim. App. 1985).

In *Mathis v. State*, 650 S.W.2d 532 (Tex. App.—Dallas 1983, pet. ref'd), an officer testified that he "went to the vice control section of the police department where he filled out a prosecution report" and obtained a photograph of Mathis. *Mathis*, 650 S.W.2d at 534. Mathis argued that this testimony "injected an extraneous offense because it indicated [that his] photograph was on file in the police department." *Id*. The Dallas Court disagreed because the testimony contained no evidence of prior criminal conduct. *See id*. (citing *Roach v. State*, 586 S.W.2d 866 (Tex. Crim. App. 1979), *overruled on other grounds by Parker v. State*, 985 S.W.2d 460 (Tex. Crim. App. 1999)).

In *Williams v. State*, No. 05-94-01585-CR, 1997 Tex. App. LEXIS 2301 (Tex. App.—Dallas Apr. 30, 1997, pet. ref'd) (not designated for publication), a detective's "vague statement that 'there were two other offenses'" and "other information which lead him to include [Williams's] photograph in the lineup was not evidence of an extraneous offense." *Williams*, 1997 Tex. App. LEXIS 2301, at *6.

Woodruff's testimony did not present evidence of a prior crime or connect Galvez to any crime or bad act. *See Holmes*, 962 S.W.2d at 672; *see also McKay*, 707 S.W.2d at 31-32; *Mathis*, 650 S.W.2d at 534; *Williams*, 1997 Tex. App. LEXIS 2301, at *6. We, therefore, overrule issue four.

Having overruled Galvez's four issues, we affirm the judgment.


                      FELIPE REYNA
                      Justice

Before Chief Justice Gray,

Justice Reyna, and
Justice Davis
*(Chief Justice Gray concurring with note)
Affirmed
Opinion delivered and filed August 12, 2009
Do not publish
[CRPM]

\*        (Chief Justice Gray concurs in the judgment to the extent that it affirms the trial court's judgment.  A separate opinion will not issue.  He notes, however, that the discussion of the third issue, the issue regarding "hearsay" evidence is somewhat confusing and could be misleading if not studied carefully.  The more direct analysis and disposition of that issue is that the offer of proof included a question that clearly called for hearsay and no exception was offered for its admission.  Therefore, even if some of the questions and answers in the offer of proof were not properly excluded on the basis of a hearsay objection, the trial court did not err in denying the admission of the offer of proof in total.  It is not error because it is not the trial court's duty to sort through the tendered evidence, sorting admissible from inadmissible.  Rather, the burden to segregate the evidence is on the party suffering the adverse ruling to eliminate from the tender the admissible from the inadmissible and reoffer only the admissible portion of the evidence, if the ruling was exclusion, or object to the inadmissible portion only, if the ruling was admission.  Thus, because at least some of the offer of proof called for hearsay and a hearsay objection was made and sustained, it was then incumbent on the offering party to segregate and reoffer the evidence that was not properly excluded on a hearsay objection.  This segregation was not made.  The trial court, therefore, committed no error.  *Schulz v. State*, 446 S.W.2d 872, 874 (Tex. Crim. App. 1969) ("It is not incumbent upon the trial court, where evidence offered is relevant or admissible in part only, to separate the good from the bad but it may reject the evidence as a whole.")