

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-10-00173-CR

_____


BRENT GREGORY MOORE, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the 241st Judicial District Court
Smith County, Texas
Trial Court No. 241-0712-10


Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

## I. Background

The genesis of the event leading to Brent Gregory Moore's conviction of the felony offense of evading arrest with a vehicle,[1] including a deadly weapon allegation, an allegation of a prior felony conviction, and a previous conviction for evading arrest was a fairly mundane traffic stop in the early morning hours of April 14, 2010. The traffic stop was occasioned because the pickup truck Moore was driving on U.S. Highway 69 in Smith County, Texas, did not have an operational light illuminating his license plate.[2]

After having been stopped and pulled over by Jeff Hopson, a Smith County sheriff's deputy, the incident rapidly escalated. Moore refused to comply with Hopson's request to roll down the driver's side window of his truck, to place his hands on the steering wheel, and finally, to exit the vehicle. When Hopson finally reached through the half-open window in an attempt to unlock the vehicle's door, Moore grabbed his arm, but Hopson was able to free himself. Back-up officers Josh Caulkins, Toby Hughes, and Glenn Barnes quickly arrived on the scene to assist Hopson. After Hopson extricated his arm from Moore's grasp, Moore put his truck in gear, turned his truck around so that it was traveling north in the southbound lane, and sped off. As

---

[1]TEX. PENAL CODE ANN. § 38.04 (West 2011).

[2]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005). We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

2

Moore sped into the U-turn, Barnes was struck with the rear quarter panel of the truck when Moore sped off, causing Barnes to suffer a sprained knee. Even though Hughes shot the right front truck tire, causing it to deflate, and Caulkins fired an additional three rounds in an attempt to disable the truck, Moore sped off, going north in the southbound lane.

Reaching speeds of over 100 miles per hour (despite the deflated front tire), Moore fled from the pursuing deputies.[3] The chase ended when Moore's truck became disabled, evidently as a result of rounds fired into its engine. Moore was arrested and charged with the felony offense of evading arrest with a vehicle, with a deadly weapon allegation,[4] an allegation of a prior felony conviction, and a previous conviction for evading arrest. The jury returned a guilty verdict and assessed a punishment of twenty years' imprisonment and a fine in the amount of $10,000.00.[5]

In a single issue, Moore claims that the evidence is legally insufficient to support the deadly weapon finding. We affirm the judgment of the trial court.

---

[3]The chase was captured on three separate video recordings from the responding officers' patrol vehicles.

[4]The jury was asked, during the punishment phase of the trial, whether Moore used a deadly weapon and answered in the affirmative. *See Lafleur v. State*, 106 S.W.3d 91, 94–96 (Tex. Crim. App. 2003) (jury may make affirmative finding through deadly weapon special issue included in jury charge). Such finding was recorded in the judgment. A deadly weapon finding limits a defendant's eligibility for community supervision and parole. TEX. CODE CRIM. PROC. ANN. art. 42.12, §3g(a)(2) (West Supp. 2011); TEX. GOV'T CODE ANN. §§ 508.145, 508.149, 508.151 (West Supp. 2011).

An affirmative deadly weapon finding has a negative impact on a defendant's eligibility for community supervision, parole, and mandatory supervision. *Mann v. State*, 58 S.W.3d 132, 133 (Tex. Crim. App. 2001).

[5]The applicable sentencing range was enhanced based on Moore's plea of true to a prior felony conviction. TEX. PENAL CODE ANN. § 12.42 (West 2011).

3

## II.        Standard of Review

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of evading detention with a motor vehicle beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

We are directed to subject challenges to the legal sufficiency of the evidence to the hypothetically-correct jury charge analysis. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically-correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* This standard ensures that a judgment of acquittal is reserved for those situations

4

in which there is an actual failure in the State's proof of the crime, rather than a mere error in the jury charge submitted. *Id.*

### III.    Legally Sufficient Evidence Supports the Verdict

Moore claims that the evidence at trial proved only a hypothetical danger posed by the manner in which he operated his vehicle because no person was actually placed in danger of serious bodily injury or death. Moore focuses on the fact that there were no other vehicles encountered by him on the road during his high-speed flight from the deputies, so the danger posed by driving at a high rate of speed in the wrong lane of traffic was merely hypothetical. He, therefore, contends the evidence is legally insufficient to support a finding that he used or exhibited his vehicle in a manner consistent with the definition of a deadly weapon.

The Texas Penal Code defines "deadly weapon" as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (West 2011). "Serious bodily injury" is bodily injury that "creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE ANN. § 1.07(a)(46) (West 2011). Within the context of a deadly weapon allegation, the evidence before this Court must show that (1) the item alleged as a deadly weapon (here, a pickup truck) meets the statutory definition of a dangerous weapon, (2) the deadly weapon was used during the event that led to the felony conviction, and (3) other people were put in actual danger. *Drichas v. State*, 175

5

S.W.3d 795, 798 (Tex. Crim. App. 2005). Moore only challenges the third requirement, i.e., that other people were put in actual danger.

A motor vehicle may be a deadly weapon, depending on the circumstances of its use. *Id.* However, not every vehicle used to evade arrest is a deadly weapon. *Id.* at 799 ("We do not suggest that a defendant should be charged with using a vehicle as a deadly weapon every time the offense of evading arrest or detention is committed."). A motor vehicle is considered a deadly weapon if the manner of its use is capable of causing death or serious bodily injury; a deadly weapon finding is supported "on a sufficient showing of actual danger." *Id.*

Moore claims that the evidence was insufficient here because no one was placed in danger of serious bodily injury or death. Said another way, Moore contends there is no evidence to show that his truck was capable of causing death or serious bodily injury to another person. *See Williams v. State*, 946 S.W.2d 432, 435–36 (Tex. App.—Fort Worth 1997), *rev'd in part on other grounds*, 970 S.W.2d 566 (Tex. Crim. App. 1998) (to sustain finding, there must be evidence to show vehicle capable of causing death or serious bodily injury to another person). This capability exists if "there was someone present who was placed in danger of serious bodily injury or death." *Id.* at 435. There is no requirement for the actor to have the specific intent to use the vehicle as a deadly weapon. *Drichas*, 175 S.W.3d at 798.

Here, the evidence shows that Moore fled pursuit at speeds in excess of 100 miles per hour while driving the wrong direction on a divided highway, including portions which were in a

6

construction zone. When proceeding up hills, Moore took no precautions of either moving to the shoulder or slowing down so as to minimize the danger of oncoming traffic appearing unexpectedly. Although the portion of U.S. Highway 69 where the chase occurred routinely carries traffic all hours of the day, there was no other traffic on the road at the time of the chase, other than a single vehicle actually encountered "when [the chase] was coming to an end." This lone vehicle was encountered after Moore's truck moved onto the shoulder after his vehicle had been disabled and was rolling to a stop. There were no other vehicles encountered in the area when Moore was traveling at extremely high rates of speed during the chase.

In a similar case, the Tyler Court of Appeals found the evidence sufficient to sustain a deadly weapon finding where the appellant fled from the police at speeds that reached 100 miles per hour. In that case, even though the driver crossed into the oncoming lanes of traffic around blind curves and paid no heed to traffic control measures, there were no cars in his path at the time. Thus, the danger was merely hypothetical. *Jones v. State*, No. 12-07-00308-CR, 2008 WL 2814877 (Tex. App.—Tyler July 23, 2008, pet. ref'd) (mem. op., not designated for publication).[6] In addition to hypothetical dangers, *Jones* involved actual danger illustrated by the fact that Jones narrowly missed a motorcycle, almost lost control of his own vehicle, another car had to move into a driveway to avoid Jones, and Jones encountered several oncoming vehicles

---

[6]Unpublished opinions may be cited to illustrate the reasoning employed when faced with similar facts "rather than simply arguing without reference, that same reasoning." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

7

while traveling at a high rate of speed and not keeping solely to his own lane. *Id.* at *3. The evidence was, therefore, sufficient to sustain the deadly weapon finding.

The State argues that Moore posed actual danger in the way he operated his vehicle. It is apparent that Moore caused actual injury to Barnes, who was struck by the rear quarter panel of Moore's truck as he turned his truck and sped off in order to elude capture. As a result of this contact, Barnes was taken to the hospital for an injury to his knee and was required to wear a knee brace for two weeks. As a result, Barnes was off duty for a period of time. To be sure, the injury sustained by Barnes could have been much more severe. The video recording viewed by the jury reveals that Barnes, as well as the other officers, were standing within inches of Moore's truck when he suddenly sped off into a U-turn. While it is questionable whether Barnes' injury meets the statutory definition of "severe bodily injury," it is not required that an actual severe bodily injury be sustained, only that Barnes had been "placed in danger of serious bodily injury or death" in order to show the vehicle was capable of causing death or serious bodily injury. *Williams*, 946 S.W.2d at 435. As this Court stated in *Drichas v. State*, 219 S.W.3d 471, 476 n.5 (Tex. App.—Texarkana 2007, pet. ref'd), police officers should not be excluded from the class of persons capable of being endangered by the driver of a fleeing vehicle.

All that is required for a motor vehicle to be considered a deadly weapon is that it be used in a manner capable of causing death or serious bodily injury and that it pose an actual risk. The evidence in the present case met that burden. The manner in which Moore operated his truck

8

posed actual danger to Barnes as well as to the other officers in proximity to his truck at the time he rapidly accelerated the truck, a course of action which dangerously swung it out in the path of the officers, who were forced to move quickly back from the truck in order to avoid being struck. The danger to the deputies was not theoretical, it was real. The evidence here, when viewed in a light most favorable to the jury's verdict, supports the conclusion that a rational fact-finder could have found, beyond a reasonable doubt, that Moore used his truck as a deadly weapon during the commission of the offense of evading arrest or detention, or immediate flight from said offense.

## IV.    Conclusion

We affirm the judgment of the trial court.


Bailey C. Moseley
Justice

Date Submitted:    July 29, 2011
Date Decided:    August 2, 2011

Do Not Publish