ACCEPTED
14-14-00152-CR
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
1/6/2015 4:21:49 PM
CHRISTOPHER PRINE
CLERK

## No. 14-14-00152-CR

In the
Court of Appeals
For the
Fourteenth Judicial District of Texas
At Houston

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS

1/6/2015 4:21:49 PM

CHRISTOPHER A. PRINE
Clerk

————————◆————————

## No. 1340544

In the 180th District Court of
Harris County, Texas

————————◆————————

## DAVID DEAN HARRIS

*Appellant*

v.

## THE STATE OF TEXAS

*Appellee*

————————◆————————

STATE'S APPELLATE BRIEF

————————◆————————

**DEVON ANDERSON**
District Attorney
Harris County, Texas

**CARLY DESSAUER**
Assistant District Attorney

**VERONICA NELSON &
CORY STOTT**
Assistant District Attorney

Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002
Tel.: 713/755-5826
Fax No.: 713/755-5809

ORAL ARGUMENT REQUESTED ONLY IF REQUESTED BY APPELLANT

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Texas Rule of Appellate Procedure 9.4(g) and Texas Rule of Appellate Procedure 39.1, the State requests oral argument only if appellant requests oral argument.

## IDENTIFICATION OF THE PARTIES

Pursuant to Texas Rule of Appellate Procedure 38.2(a)(1)(A), a complete list of the names of all interested parties is provided below.

Counsel for the State:

**Devon Anderson** — District Attorney of Harris County

**Carly Dessauer** — Assistant District Attorney on appeal

**Veronica Nelson** — Assistant District Attorney at trial

**Cory Stott** — Assistant District Attorney at trial

Appellant or criminal defendant:

**David Dean Harris**

Counsel for Appellant:

**Maite Sample** — Attorney on appeal

**Thomas Martin** — Attorney at trial

Trial Judge:

**Hon. Catherine Evans**

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ........................................................ ii

IDENTIFICATION OF THE PARTIES ..................................................................... ii

TABLE OF AUTHORITIES ...................................................................................... v

STATEMENT OF THE CASE .................................................................................... 1

STATEMENT OF FACTS .......................................................................................... 1

SUMMARY OF THE ARGUMENTS......................................................................... 6

REPLY TO APPELLANT'S FIRST POINT OF ERROR............................................ 7

I.   Appellant had not met his burden of showing that Texas Code of Criminal
     Procedure article 38.37, section 2(b) is unconstitutional. ............................ 7

     a.   Appellant waived his constitutional challenge to Article 38.37, section
          2(b) because he failed to appraise the trial court of his complaint that the
          statute violates substantive due process. ............................................... 10

     b.   Even if appellant could raise his constitutional challenge to Article 38.37,
          section 2(b) on appeal, appellant fails to meet his burden of showing that
          Article 38.37 is unconstitutional............................................................ 12

          i.   Defendants do not have a fundamental right to a trial free from the
               introduction of extraneous offense evidence. ................................. 16

          ii.  Article 38.37, section 2(b) does not capriciously and arbitrarily
               deprived defendants of their right to a trial free from evidence of
               specific extraneous offenses committed against children. ............... 18

REPLY TO APPELLANT'S SECOND POINT OF ERROR .................................... 23

II.  Appellant failed to timely and specifically inform the trial court that he
     wanted to object under Rule 403 to the testimony of L.P., L.H., and J.A.
     and thus waived his argument that their testimony was unfairly prejudicial........... 23

     a.   Appellant failed to preserve error under Rule 403. ............................... 25

     b.   Even if appellant had preserved error, the trial court would not have
          abused its discretion in admitting the testimony of L.P., L.H., and J.A. at
          trial. ...................................................................................................... 26

i. The trial court would not have abused its discretion in admitting appellant's separate sexual offenses against L.P. had appellant objected to the evidence under Rule 403. ........................................ 26

ii. The trial court would not have abused its discretion in admitting appellant's separate sexual offense against L.H. had appellant objected to the evidence under Rule 403. ........................................ 28

iii. The trial court would not have abused its discretion in admitting appellant's separate sexual offenses against J.A. had appellant objected to the evidence under Rule 403. ........................................ 29

REPLY TO APPELLANT'S THIRD POINT OF ERROR ......................................... 30

III. The trial court did not abuse its discretion when it denied appellant's motion for new trial without first holding a live hearing because the court could determine the merit of the issues from the record. ......................................... 30

a. The trial court could determine from the record that appellant's trial counsel was not ineffective for failing to adequately investigation Leslie's bias and motive. ........................................................................... 32

b. The trial court could determine from the record that appellant's trial counsel was not ineffective for failing to call Charles Hill, Jessica James, and Sean James at trial. ........................................................................... 34

c. The trial court could determine from the record that appellant's trial counsel was not ineffective for failing to investigate the existence of a lock on the bathroom door. ........................................................................... 36

d. The trial court could determine from the record that appellant's trial counsel was not ineffective for failing to visit appellant in jail before and during trial. ........................................................................... 37

e. The trial court did not err in overruling appellant's motion for new trial without conducting an oral hearing because the trial court could make credibility determinations from the record and the affidavits before it. ............ 38

CONCLUSION ........................................................................................................ 39

CERTIFICATE OF COMPLIANCE ........................................................................ 40

CERTIFICATE OF SERVICE ................................................................................. 41

# TABLE OF AUTHORITIES

## CASES

*Albrecht v. State*,
486 S.W.2d 97 (Tex. Crim. App. 1972) ....................................................................7, 17

*Anthony v. State*,
209 S.W.3d 296 (Tex. App.—Texarkana 2006, no pet.) ........................................... 12

*Bekendam v. State*,
441 S.W.3d 295 (Tex. Crim. App. 2014) ................................................................9, 11

*Brantley v. State*,
48 S.W.3d 318 (Tex. App.—Waco 2001, pet. ref'd) ................................................... 18

*Caballero v. State*,
919 S.W.3d 919 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) ....................... 24

*Checo v. State*,
402 S.W.3d 440 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) .................24, 25

*Colyer v. State*,
428 S.W.3d 117 (Tex. Crim. App. 2014) ...................................................................... 30

*Cooks v. State*,
240 S.W.3d 906 (Tex. Crim. App. 2007) ...................................................................... 37

*Curry v. State*,
910 S.W.2d 490 (Tex. Crim. App. 1995) .................................................................9, 12

*Dennis v. State*,
178 S.W.3d 172 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) ....................27, 28

*Euler v. State*,
218 S.W.3d 88 (Tex. Crim. App. 2007) ........................................................................ 14

*Fleming v. State*,
323 S.W.3d 540 (Tex. App. 2010),
*vacated on other grounds*, 341 S.W.3d 415 (Tex. Crim. App. 2011) ................................ 15

*Fleming v. State*,
376 S.W.3d 854 (Tex. App.—Fort Worth 2012, pet. ref'd) ....................................... 14

*Fulmer v. State*,
401 S.W.3d 305 (Tex. App.—San Antonio 2013, pet. ref'd),
*cert. denied*, 134 S. Ct. 436 (2013) ................................................................................. 14

*Gonzalez v. State*,
No. 01-13-00901-CR, 2014 WL 7174288 (Tex. App. Dec. 16, 2014, no pet. h.) .... 27

*Holden v. State*,
201 S.W.3d 761 (Tex. Crim. App. 2006) ................................................................31, 38

*Jackson v. State*,
320 S.W.3d 873 (Tex. App.—Texarkana 2010, pet. ref'd) ......................................... 16

*Jenkins v. State*,
993 S.W.2d 133 (Tex. App.—Tyler 1999, pet. ref'd) ............................................17, 18

*Jordan v. State*,
883 S.W.2d 664 (Tex. Crim. App. 1994) ..................................................................... 33

*Karenev v. State*,
281 S.W.3d 428 (Tex. Crim. App. 2009) ...............................................................9, 11, 12

*Lakey v. Taylor*,
435 S.W.3d 309 (Tex. App.—Austin 2014, no pet.) ................................................... 11

*Laney v. State*,
223 S.W.3d 656 (Tex. App.—Tyler 2007, no pet.) .........................................15, 17, 18

*Lewis v. State*,
No. 14-13-00330-CR, 2014 WL 4552335
(Tex. App.—Houston [14th Dist.] Sept. 16, 2014, pet. filed) .................................... 14

*Martin v. State*,
176 S.W.3d 887 (Tex. App.—Fort Worth 2005, no pet.) .......................................... 17

*Montgomery v. State*,
810 S.W.2d 372 (Tex. Crim. App. 1990) ................................................................24, 25

*Morse v. State*,
29 S.W.3d 640 (Tex. App.—Beaumont 2000, no pet.) .............................................. 38

*Phelps v. State*,
5 S.W.3d 788 (Tex. App.—San Antonio 1999, pet. ref'd) ........................................ 18

*Price v. State*,
413 S.W.3d 158 (Tex. App.—Beaumont 2013),
*aff'd*, 434 S.W.3d 601 (Tex. Crim. App. 2014) ........................................................... 11

*Rozell v. State*,
176 S.W.3d 228 (Tex. Crim. App. 2005) ..................................................................... 31

*Sanders v. State,*
255 S.W.3d 754 (Tex. App.—Fort Worth 2008, pet. ref'd)................................24, 26

*Schlittler v. State,*
No. 12-13-00269-CR, 2014 WL 5474786
(Tex. App.—Tyler Oct. 30, 2014, pet. ref'd) ................................................... 14

*Sony v. State,*
307 S.W.3d 348 (Tex. App.—San Antonio, no pet) ...................................9, 11

*State ex rel. Lykos v. Fine,*
330 S.W.3d 904 (Tex. Crim. App. 2011) ...................................................... 13

*State v. Mechler,*
153 S.W.3d 435 (Tex. Crim. App. 2005) ................................................23, 24

*State v. Rosseau,*
396 S.W.3d 550 (Tex. Crim. App. 2013) ...............................................13, 16

*Strickland v. Washington,*
466 U.S. 668 (1984)..............................................................................31, 35

*United States v. Salerno,*
481 U.S. 739 (1987)................................................................................. 14

*Varnes v. State,*
63 S.W.3d 824 (Tex. App.—Houston [14th Dist.] 2001, no pet.) ............................ 14

*Washington v. Glucksberg,*
521 U.S. 702 (1997).........................................................................15, 17, 18

## STATUTES

CONN. CODE EVID. §4-5 (West 2014) ........................................................... 20

FLA. STAT. ANN. §90.404(2)(b),(c) (West 2014)................................................. 20

GA. CODE ANN. §24-4-414 (2014) .............................................................. 20

KAN. STAT. ANN. §60-455(c),(d) (West 2014)................................................... 20

LA. CODE EVID. ANN. art. 412.2 (2014) ......................................................... 20

NEB. REV. STAT. §27-414 (2014) ................................................................ 20

OKLA. STAT. ANN. tit. 12, §2413 (West 2014) ................................................... 20

TEX. CODE CRIM. PROC. ANN. art. 38.37 (West Supp. 2014) ......................................7, 17

TEX. CODE CRIM. PROC. ANN. art. 38.37, §2(b) (West 2005) ....................................... 22

TEX. CODE CRIM. PROC. ANN. art. 38.37, §2(b) (West Supp. 2014) ....................8, 21, 22

TEX. CODE CRIM. PROC. ANN. art. 38.37, §2-a (West Supp. 2014) ...........................8, 22

WIS. STAT. ANN. §904.04(2)(b) (West 2014) ................................................................. 20

## RULES

ARIZ. R. EVID. 404(c) .................................................................................................. 20

FED. RULE EVID. 404(b) .............................................................................................. 17

FED. RULE EVID. 413 ................................................................................ 17, 20, 21, 22

FED. RULE EVID. 414 ............................................................................................17, 20

TEX. R. APP. P. 9.4(g) .................................................................................................. ii

TEX. R. APP. P. 9.4(i). ................................................................................................. 40

TEX. R. APP. P. 21.7 .................................................................................................... 31

TEX. R. APP. P. 33.1(a) ............................................................................................... 24

TEX. R. APP. P. 33.1(a)(1) ......................................................................................9, 10

TEX. R. APP. P. 38.2(a)(1)(A) ..................................................................................... ii

TEX. R. APP. P. 39.1 .................................................................................................... ii

TEX. R. EVID. 103(a)(1) .............................................................................................. 24

TEX. R. EVID. 401 ....................................................................................................... 23

TEX. R. EVID. 402 ....................................................................................................... 23

TEX. R. EVID. 403 ....................................................................................................... 23

TEX. R. EVID. 404(b) ..............................................................................................7, 17

TEX. R. EVID. 405 ......................................................................................................... 7

UTAH R.EVID. 404(c) .................................................................................................. 20

VA. SUP. CT. RULE 2:413 ............................................................................................. 20

## CONSTITUTIONAL PROVISIONS

TEX. CONST. art. I, § 19 ................................................................................ 13

U.S. CONST. amend. XIV, § 1 ...................................................................... 13

## OTHER AUTHORITIES

House Comm. on Criminal Procedure Reform, Bill Analysis, Tex. S.B. 12, 83rd Leg.,
R.S. 12 (2013) ............................................................................................ 19, 20

Huffman, Author's/Sponsor's Statement of Intent, Tex. S.B. 12, 83rd Leg., R.S. 12
(2013) ......................................................................................................... 19, 20

**TO THE HONORABLE COURT OF APPEALS:**

## STATEMENT OF THE CASE

Appellant was charged with aggravated sexual assault of a child under the age of seventeen (CR at 13). He entered a plea of not guilty, and a jury trial was held to determine guilt (CR at 181; 6 RR at 23). The jury found appellant guilty (CR at 162, 181; 11 RR at 6). Per the jury's determination, the court sentenced appellant to fifty years confinement in the Institutional Division of the Texas Department of Criminal Justice and a $5,000 fine (CR at 178, 181; 13 RR at 3). The court certified appellant's right to appeal, and appellant filed a timely notice of appeal (CR at 188-89, 190). Appellant also filed a motion for new trial alleging that his counsel was ineffective (CR at 199-212). The trial court ordered appellant's trial counsel to submit an affidavit responding to appellant's allegations of ineffectiveness (CR at 219-221). After receiving counsel's affidavit, the trial court denied appellant's motion for new trial without first holding a live hearing (CR at 219-221, 222-27).

## STATEMENT OF FACTS

In November 2011, Sergeant Richard Coker with the Tyler County Sheriff's Department received information that led to a sexual assault investigation of appellant (7 RR at 18, 20, 21). One of appellant's daughters, B.H., had informed appellant's step-daughter, L.P., that something had happened to her involving appellant (6 RR at 74). Coker's investigation of B.H.'s outcry uncovered other allegations that appellant inappropriately touched and sexually assaulted multiple young girls, some beyond

1

Coker's jurisdiction (7 RR at 23-27). Thus, an investigation into sexual abuse allegations also began in Harris County (7 RR at 130). These investigations revealed that appellant had sexually assaulted or inappropriately touched four girls—appellant's teenage step-daughter, L.P., his son's teenage high school girlfriend, J.A., a teenage girl that had lived with his family for a while, J.K., and his teenage daughter, L.H.

Appellant molested and sexually assaulted L.P. when she was between the ages of ten and fourteen (6 RR at 45-46, 50). The abuse began with appellant touching her breasts at night, then escalated to incidents in which appellant would rub his penis on L.P.'s vagina until he ejaculated (6 RR at 45-46, 55-57, 62-63). When L.P. was fourteen, appellant also put his penis into L.P.'s mouth (6 RR at 65). Appellant told L.P. not to tell anyone, but L.P. could not stand the abuse (6 RR at 64, 67). She ran away from home, but when she returned, appellant told her he would never touch her again if she did not say anything (6 RR at 67, 73). Nevertheless, L.P. mentioned the abuse to her mother, Leslie, who did not do anything (6 RR at 73-74). Despite feeling that no one believed her, L.P. told her step-sisters to let her know if appellant ever touched them, and when B.H. informed her of appellant's inappropriate behavior towards her, L.P. finally revealed his abuse of her (6 RR at 74).

Appellant's sexual assault on J.A., who was fourteen years old at the time, also came to light during the investigation (7 RR at 70, 81). One night, appellant chaperoned J.A. on a horseback ride that went to a secluded area (7 RR at 71, 72, 25). Appellant stopped their ride, telling J.A. that he needed to use the bathroom (7 RR at

76). They both got off their horses, and appellant came up to J.A., forced her on the ground, and started kissing her (7 RR at 77). Appellant remarked to J.A., what "a beautiful young body [she] had," and told her that "he was going to show [her] what a real man was" (7 RR at 77). Afraid that she was going to be raped by her boyfriend's father, J.A. told appellant to stop (7 RR at 80). He did not, and when he continued to unbutton her pants, she told him not to have sex with her because she was using a tampon (7 RR at 80, 81). J.A. hoped that would deter appellant, but he just removed the tampon, put his hand inside her, and told J.A. that she had "a tight young vagina" (7 RR at 82, 83). At this point, appellant's wife Leslie, worried about the length of time they had been riding, drove to area to look for them (7 RR at 83-84). Appellant had to stop assaulting J.A. but was furious (7 RR at 83-84). He took his wife's car keys, locked her car, and took off with the two horses which forced J.A. and Leslie to walk back to the house on foot (7 RR at 84-85, 87, 163).

The investigation also uncovered evidence that appellant had also abused J.K., who was friends with appellant's wife, Leslie, and who had moved in with their family after she ran away from her own home at fifteen (8 RR at 29, 31, 33). When she first moved in with the family, appellant slowly became very controlling over her by dictating with whom she could associate and when she could leave the house (8 RR at 35). Appellant also started making J.K. uncomfortable by the way he would complement her appearance and touch her in a way that J.K. thought was playful (6 RR at 71; 8 RR at 36). This behavior escalated on a day between Thanksgiving and

3

Christmas when appellant sexual assaulted J.K. while his children were at school and Leslie was at work (8 RR at 38-39, 41).

Appellant came into the bathroom while J.K. was showering and stepped into the shower with her (8 RR at 41-43). Realizing he was there, J.K. tried to get away by leaving the shower, but appellant caught her and pushed her against the bathroom sink (8 RR at 43-44). J.K. begged him to stop, but appellant penetrated her vagina with his penis anyway (8 RR at 46, 49). When he finished, appellant told J.K. that she "needed to keep [her] mouth shut or he would kick [her] ass" and threatened to tell his wife (8 RR at 50-51). Terrified that Leslie would think that J.K. willingly had sex with appellant and embarrassed that the assault had happened, J.K. did as appellant said (8 RR at 51, 53).

Feeling like she did not have anywhere else to go, J.K. continued to live with appellant and his family but was on guard against being alone with appellant, but soon after J.K.'s sixteenth birthday, she woke up to find appellant lying next to her with his hands down her pajamas (8 RR at 56, 58-59, 60). J.K. tried to get up to leave, but appellant forced her back down and had anal sex with J.K. despite her pleas for him to stop (8 RR at 62-63). When he was done, appellant threatened to kill J.K. if she told anyone what had happened (8 RR at 66-67). Fed up with his actions, J.K. left the house and moved to Harlingen (8 RR at 70). However, J.K. soon returned to Harris County, and Leslie welcomed her back into their home (8 RR at 70).

4

Appellant, however, was not finished with J.K., and one day in September 2002, he grabbed the sixteen-year-old J.K. and threw her on the living room couch (8 RR at 71-72). He pulled a revolver from under the couch, pointed it at her, and told her not to move (8 RR at 73, 74). Appellant then laid the gun across her neck as he took her pants off and forced her to have sex with him (8 RR at 74-76). When he finished, appellant again told J.K. that he would kill her and tell Leslie (8 RR at 77). J.K. yelled back that he should go ahead and tell Leslie (8 RR at 77). She left the house that day and never returned (8 RR at 77).

Appellant's daughter, L.H., also had an inappropriate encounter with appellant. She was staying with him after he and Leslie separated, and appellant made her sleep in the same bed as him (7 RR at 34, 35, 37). Appellant touched L.H.'s leg in a way that made L.H. feel "weird, awkward" (7 RR at 39). L.H. got up from the bed and told appellant that if "he was going to touch any of [her] sisters again [she] was going to hurt him" (7 RR at 39). L.H. then stayed in the kitchen away from appellant until her mother came to pick her up from his house (7 RR at 39, 40).

The State tried appellant on the aggravated sexual assault allegations against J.K. first (CR at 13). However, the State notified appellant of its intent to use the separate sexual offenses against L.P., J.A., and L.H. at trial, as well as other incidents involving B.H., another daughter of appellant, and S.A., another teenage girlfriend of appellant's son (CR at 58-68, 131-35). Appellant requested a hearing outside the presence of the jury for the trial court to determine if the State could introduce the

5

separate offenses at trial (CR at 139-40). At the hearing, the court found that the State could admit appellant's offenses against L.P., J.A., and one incident involving L.H. but prevented the State from introducing evidence regarding an incident against B.H., an separate incident involving L.H., and an incident involving S.A. (5 RR at 50, 72, 93, 118, 120-21, 132).

## SUMMARY OF THE ARGUMENTS

Appellant failed to properly preserve his constitutional challenge to Texas Code of Criminal Procedure Article 38.37, section 2(b) because appellant did not notify the trial court of his substantive due process argument.[1] Further, appellant failed to meet his burden of showing that the Article violates substantive due process.

Appellant failed to preserve his argument that probative value of L.P.'s testimony, L.H.'s testimony, and J.A.'s testimony was substantially outweighed by the danger of unfair prejudice because he never raised the issue to the trial court during trial. Even if appellant had preserved error, the trial court would not have abused its discretion by allowing the evidence to be admitted at trial.

The trial court did not err when it denied appellant's motion for new trial without first holding a hearing because the court could sufficiently determine appellant's ineffective assistance of counsel claims from the affidavits submitted to the

---

[1] All references to Articles will refer to Articles from the Texas Code of Criminal Procedure unless otherwise stated.

6

court and from the trial record.  Since a hearing was not needed, the trial court did not abuse its discretion.

## REPLY TO APPELLANT'S FIRST POINT OF ERROR

**I.    Appellant had not met his burden of showing that Texas Code of Criminal Procedure article 38.37, section 2(b) is unconstitutional.**

In his first issue, appellant contends that Article 38.37, section 2(b) is unconstitutional because it violates a defendant's rights to substantive due process and due course of law under the federal and state constitutions.  However, in making these arguments, appellant overlooks that he failed to preserve error because he never notified the trial court that he intended to challenge the Article on these grounds or articulated the claims that he now raises in his brief.  Since appellant failed to preserve his constitutional challenge to Article 38.37, section 2(b) at trial, appellant has waived his argument on appeal.

### *Applicable Law*

While an accused is generally entitled to be tried on the accusations made in the State's pleading and not on some collateral crime, the Court of Criminal Appeals has long recognized that evidence of extraneous offenses may be admitted at the accused's trial and several provisions of Texas evidentiary law allow such evidence to be admitted.  TEX. CODE CRIM. PROC. ANN. art. 38.37 (West Supp. 2014); TEX. R. EVID. 404(b); TEX. R. EVID. 405; *Albrecht v. State*, 486 S.W.2d 97, 100 (Tex. Crim. App. 1972).  Texas Code of Criminal Procedure Article 38.37 is one of these laws.

7

Notwithstanding Rules of Evidence 404 and 405, Article 38.37, section 2(b) allows trial courts the discretion to admit evidence that a defendant has committed certain separate sexual offenses against a child during the trial of the defendant on an alleged sexual offense committed against another child. TEX. CODE CRIM. PROC. ANN. art. 38.37, §2(b) (West Supp. 2014). Indecency with a child, sexual assault of a child, and aggravated sexual assault of a child are among the offenses permitted to be admitted under Article 38.37, section 2(b). TEX. CODE CRIM. PROC. ANN. art. 38.37, §2(b) (West Supp. 2014).

Article 38.37 allows a trial court the ability to admit evidence of a separate sexual offense committed against a child other than the complainant in the charged offense "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." TEX. CODE CRIM. PROC. ANN. art. 38.37, §2(b) (West Supp. 2014). However, the trial court may only admit the evidence of the separate sexual offense committed against another child after the trial court has determined that the evidence will adequately support a finding by the jury that the defendant committed the separate offenses beyond a reasonable doubt during a hearing out of the presence of the jury. TEX. CODE CRIM. PROC. ANN. art. 38.37, §2-a (West Supp. 2014). Only then does the trial court have the discretion to admit the evidence of such extraneous sexual offenses against children under Article 38.37. TEX. CODE CRIM. PROC. ANN. art. 38.37, §2-a (West Supp. 2014).

Texas Rule of Appellate Procedure 33.1 requires that a party present its timely objection to the trial court in a manner that states "the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds [are] apparent from the context." TEX. R. APP. P. 33.1(a)(1); *see Bekendam v. State*, 441 S.W.3d 295, 299 (Tex. Crim. App. 2014) (noting that preservation of error is a systemic requirement on appeal). To preserve error, "[t]he complaining party must let the trial judge know what [he] wants and why [he] thinks [he] is entitled to it, and do so clearly enough for the judge to understand." *Bekendam*, 441 S.W.3d at 299. While reviewing courts do not examine with hyper-technical scrutiny whether a party preserved error, the objection made at trial must comport with the argument made on appeal. *Bekendam*, 441 S.W.3d at 299.

A defendant may not raise a facial challenge or an as applied challenge to the constitutionality of a statute for the first time on appeal. *Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009); *Curry v. State*, 910 S.W.2d 490, 496 (Tex. Crim. App. 1995); *see Sony v. State*, 307 S.W.3d 348, 352-53 (Tex. App.—San Antonio, no pet).

*Analysis*

a. **Appellant waived his constitutional challenge to Article 38.37, section 2(b) because he failed to appraise the trial court of his complaint that the statute violates substantive due process.**

Appellant waived his substantive due process challenge to the constitutionality of Article 38.37, section 2(b) that he raises in his brief because he did not specifically advance this argument to the trial court. *See* TEX. R. APP. P. 33.1(a)(1).

As the record shows, during the pretrial hearing in which the trial court determined the admissibility of the separate sexual offenses against other children that the State wanted to introduce under Article 38.37, section (2)(b), appellant raised an objection that the trial court overruled (CR at 139-40; 5 RR at 5). The objection appellant made was to the hearing, not to the constitutionality of the Article:

> At this time for record purposes the Defense would like to lodge an objection to *the hearing* under the due process clause of the Fifth and Fourteenth Amendment to the U.S. Constitution, Article I, section 19 of the Texas Constitution, and Article I, section 1.04 of the Texas Code of Criminal Procedure (5 RR at 5) (emphasis added).

In making this objection, appellant failed to preserve his constitutional challenge to the fairness of his trial that he now raises in his brief and instead lodged a due process objection to the hearing.

By making his objection to the hearing, appellant failed to preserve the arguments he now makes in his first point of error because he failed to inform the trial court that he specifically wanted to challenge the constitutionality to Article

10

38.37, section 2(b) on the theory that it denied him a fair trial or that the Article violates substantive due process as he argues in his brief. *See Bekendam*, 441 S.W.3d at 299 (acknowledging that argument on appeal must comport with argument made at trial); *Price v. State*, 413 S.W.3d 158, 164 (Tex. App.—Beaumont 2013), *aff'd*, 434 S.W.3d 601 (Tex. Crim. App. 2014) (holding that Price failed to preserve his due process challenge to Texas Penal Code section 21.02(d) when he did not raise the issue before the trial court). Appellant also failed to inform the trial court in his objection whether he was challenging the statute's constitutionality on its face or as applied to him (5 RR at 5). *See Sony*, 307 S.W.3d at 352-53 (noting that a challenge to the constitutionality of a statute may be facial or as applied but it must be preserved). Further, appellant did not preserve error because he did not clarify that his due process challenge was on substantive grounds as he argues in his brief (5 RR at 5). *See Lakey v. Taylor*, 435 S.W.3d 309, 317 (Tex. App.—Austin 2014, no pet.) (noting that due process contains both procedural and substantive components). And finally, appellant failed to preserve error because he failed to give the trial court an opportunity to rule on his challenge to the constitutionality of Article 38.39, section 2(b) on substantive due process grounds. *Bekendam*, 441 S.W.3d at 299.

Because appellant did not specifically inform the trial court of his substantive due process challenge to the constitutionality of Article 38.37, section 2(b) and his objection to the trial court does not comport with his arguments on appeal, appellant failed to preserve error. *Bekendam*, 441 S.W.3d at 299; *see Karenev*, 281 S.W.3d at 434;

11

*Curry*, 910 S.W.2d at 496. Thus, this Court should overrule his first point of error on preservation grounds.

**b. Even if appellant could raise his constitutional challenge to Article 38.37, section 2(b) on appeal, appellant fails to meet his burden of showing that Article 38.37 is unconstitutional.**

As the first step in an analysis of an appellant's claim that a statue is unconstitutional is to ensure that the issue is preserved, appellant cannot raise his constitutional challenge to Article 38.37, section 2(b) on appeal. *Karenev*, 281 S.W.3d at 434; *Anthony v. State*, 209 S.W.3d 296, 303-04 (Tex. App.—Texarkana 2006, no pet.). However, even if this Court choses to construe appellant's vague objection as sufficient to preserve his constitutional challenge to Article 38.37, section 2(b) or if appellant could raise his challenge for the first time on appeal, appellant nevertheless failed to meet his burden of showing that the Article is unconstitutional.

### *Standard of Review*

There are two types of challenges to the constitutionality of a statute: as applied or facial. *Karenev*, 281 S.W.3d at 435 (Cochran, J., concurring). Appellant argues in his brief that Article 38.37, section 2(b) is unconstitutional because he alleges that it "renders trial so fundamentally unfair that it denies an accused citizen a fair and impartial trial." Appellant's Br. 6. Appellant argues in general terms of how the article effects the substantive due process rights of "an accused citizen" or "a defendant," so the State construes appellant's argument as a facial challenge to the

12

constitutionality of Article 38.73, section 2(b).[2]  Appellant's Br. 6, 13. In a facial challenge to a statute's constitutionality, reviewing courts examine the statute as it is written, rather than how it is applied in a particular case. *See State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 908 (Tex. Crim. App. 2011).

When addressing a constitutional challenge, reviewing court "must begin with the presumption that the statute is valid and that the Legislature did not act arbitrarily or unreasonably in enacting it." *State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013); *see* TEX. GOV'T CODE ANN. §311.021(1) (West 2005) (stating that compliance with constitutions of Texas and United States is intended when the legislature promulgates a statute).  The party challenging the statute "has the burden to establish its unconstitutionality." *Rosseau*, 396 S.W.3d at 577.

### *Applicable Law*

The Due Process Clause of the Fourteenth Amendment requires that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1.  Similarly, Article I, section 19 of the Texas Constitution provides that "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." TEX. CONST. art. I, § 19.  Though textually different, Texas courts apply the same analysis to claims under the Due Course of Law

---

[2] Similarly, appellant's objection to the trial court did not mention how the Article applied to him (5 RR at 5).

Provision and the Due Process Clause.[3] *See Lewis v. State*, No. 14-13-00330-CR, 2014 WL 4552335, at *7 (Tex. App.—Houston [14th Dist.] Sept. 16, 2014, pet. filed); *Fulmer v. State*, 401 S.W.3d 305, 311 (Tex. App.—San Antonio 2013, pet. ref'd), *cert. denied*, 134 S. Ct. 436 (2013); *see also Fleming v. State*, 376 S.W.3d 854, 857 (Tex. App.—Fort Worth 2012, pet. ref'd) (listing Texas courts that have held that the Texas due course of law provision provides the same protections as the federal Due Process Clause).

"The touchstone of due process is fundamental fairness." *Euler v. State*, 218 S.W.3d 88, 91 (Tex. Crim. App. 2007) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973)); *Schlittler v. State*, No. 12-13-00269-CR, 2014 WL 5474786, at *2 (Tex. App.—Tyler Oct. 30, 2014, pet. ref'd). Due process contains substantive as well as procedural components. *United States v. Salerno*, 481 U.S. 739, 746 (1987). Substantive due process protects citizens against arbitrary or wrongful state actions while procedural due process mandates that any government action depriving a person of life, liberty, or property be implemented in a fair manner. *Fleming*, 376 S.W.3d at 858. As appellant does not claim that the process depriving of his liberty is unfair, appellant raises a substantive due process argument to the constitutionality of Article 38.37, section 2(b) on appeal. *See Fleming v. State*, 323 S.W.3d 540, 543 (Tex. App.

---

[3] In his brief, appellant admits that the due process guarantees under federal due process provide the same protection as Texas's due course of law provision. Appellant's Br. 9. Because appellant does argue he has greater rights under one provision or the other, the State will analyze his claims under federal due process. *See Varnes v. State*, 63 S.W.3d 824, 829 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

14

2010), *vacated on other grounds*, 341 S.W.3d 415 (Tex. Crim. App. 2011) (construing Fleming's argument as a substantive due process claim).

In a substantive due process analysis, courts first determine whether the claimant had a protected liberty interest and then determine if the government deprived him of that interest capriciously and arbitrarily. *See Laney v. State*, 223 S.W.3d 656, 667 (Tex. App.—Tyler 2007, no pet.). The level of scrutiny the court uses for this analysis depends on the nature of the right involved. *Laney*, 223 S.W.3d at 667. If the right is a "fundamental right"—that is a right "deeply rooted in this Nations' history and tradition" and "implicit in the concept of ordered liberty, such that neither liberty of justice would exist if [if was] sacrificed—the state must show a compelling interest to curtail it and must do so as narrowly as possible. *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997); *Laney*, 223 S.W.3d at 667. If the right is not fundamental, substantive due process merely requires that a rational relationship exist between the state's interest and the right being curtailed. *Glucksberg*, 521 U.S. at 722; *Laney*, 223 S.W.3d at 667.

## Analysis

Assuming for the sake of argument that appellant could raise his substantive due process challenge to the constitutionality of Article 38.37, section 2(b) on appeal, appellant fails to meet his burden of showing that the Article violates due process by depriving defendants of a right in a capricious and arbitrary manner. Appellant's argument fails because a defendant's interest in having a trial free from the

15

introduction of evidence that the defendant committed other crimes is not a fundamental right and because Article 38.37, section 2(b) curtails this interest in a way that is rationally related with the Article's purposes. Thus, Article 38.37, section 2(b) does not violate substantive due process.

### i. Defendants do not have a fundamental right to a trial free from the introduction of extraneous offense evidence.

In his constitutional challenge to Article 38.37, section 2(b), appellant claims that the Article violates a defendant's right to a fair trial by allowing the introduction of evidence of an extraneous sexual offense committed against a child other than the charged complainant. In making this substantive due process argument, appellant overlooks that while he has a right to a fair trial, he does not have a fundamental right to a trial free from introduction of extraneous offense evidence. *See Jackson v. State*, 320 S.W.3d 873, 887 (Tex. App.—Texarkana 2010, pet. ref'd) (noting that error in admitting extraneous offense evidence does not affect a defendant's substantial rights and is non-constitutional error).

Indeed, appellant does not provide any authority in his brief to support the proposition that a defendant's right to a trial free from the introduction of extraneous offense evidence is a fundamental right. *See Rosseau*, 396 S.W.3d at 577 (placing the burden of challenging a statute's constitutionality on the complaining party). The State similarly has not found any authority describing a defendant's interest in a trial free from mention of extraneous offense as a right "deeply rooted in this Nations'

16

history and tradition" and instead has found that both federal and Texas law allow extraneous offense evidence to be admitted at trial. *Glucksberg*, 521 U.S. at 721; *Laney*, 223 S.W.3d at 667.

For example, the Court of Criminal Appeals has "consistently held" that while "an accused is entitled to be tried on the accusations made in the [S]tate's pleading and […] not be tried for some collateral crime," "[e]vidence of other crimes committed by the accused may be admitted." *Albrecht*, 486 S.W.2d at 100; *see Jenkins v. State*, 993 S.W.2d 133, 136 (Tex. App.—Tyler 1999, pet. ref'd). Additionally, the Texas legislature and courts have devised statutes and rules that specify exceptions to this general prohibition against the introduction of extraneous offense evidence. *Jenkins*, 993 S.W.2d at 136; *see* TEX. CODE CRIM. PROC. ANN. art. 38.37 (West Supp. 2014); TEX. R. EVID. 404(b). Similarly, the Federal Rules of Evidence also contain provisions allowing for the introduction of extraneous offense evidence at a defendant's trial. *See* FED. RULE EVID. 404(b); FED. RULE EVID. 413; FED. RULE EVID. 414.

Through these provisions, federal and state law does not recognize any absolute right for a defendant to be tried free from evidence of other crimes, and multiple courts of appeals have denied similar arguments that the introduction of extraneous evidence offense violates a defendant's right to a fair trial. *See Martin v. State*, 176 S.W.3d 887, 902 (Tex. App.—Fort Worth 2005, no pet.) (rejecting Martin's argument that the admission of extraneous acts infringed upon Martin's right for a fair

trial); *Brantley v. State*, 48 S.W.3d 318, 330 (Tex. App.—Waco 2001, pet. ref'd) (holding that Article 38.37 did not violate Brantley's due process rights); *Phelps v. State*, 5 S.W.3d 788, 797-98 (Tex. App.—San Antonio 1999, pet. ref'd) (rejecting Phelps's argument that his fundamental right to a fair trial was violated by the admission of evidence of extraneous, sexual offenses); *Jenkins*, 993 S.W.2d at 136 (rejecting Jenkin's argument that Article 38.37 rendered his trial fundamentally unfair).[4]

Given that a defendant's right to a trial free from such evidence is not recognized as right "implicit in the concept of ordered liberty," a rational based scrutiny level applies to appellant's substantive due process claim. *Glucksberg*, 521 U.S. at 721, 722; *Laney*, 223 S.W.3d at 667. Thus, appellant's challenge to Article 38.37, section 2(b) depends on whether the article capriciously and arbitrarily violates a defendant's non-fundamental right to be tried without the introduction of evidence of extraneous offenses under rational based scrutiny.

## ii. Article 38.37, section 2(b) does not capriciously and arbitrarily deprived defendants of their right to a trial free from evidence of specific extraneous offenses committed against children.

Appellant's challenge to the constitutionality of Article 38.37, section 2(b) fails because the Article is rationally related to the legislature's legitimate purpose of protecting children from sexual predators by allowing evidence of certain sexual

---

[4] The cases that discuss Article 38.37 were decided before the legislature changed article 38.37, section 2(b); however, they remain applicable to appellant's claim that he has a right to a trial free from the introduction of extraneous offense evidence.

18

offenses that defendants committed against other children to be admitted at the defendants' trials for sexual offense committed against different children. Article 38.37 rationally allows trial courts the discretion—if the proponent of the evidence meets its burden of proof—to admit evidence of a defendant's sexual offense against another child so to establish grooming behaviors, victim preferences, relationship dynamics, etc., that allow a jury a full picture of the context of the charged sexual offense against the child complainant. *See* Huffman, Author's/Sponsor's Statement of Intent, Tex. S.B. 12, 83rd Leg., R.S. 12 (2013); House Comm. on Criminal Procedure Reform, Bill Analysis, Tex. S.B. 12, 83rd Leg., R.S. 12 (2013). The Article's purpose is thus neither capricious nor arbitrary as it seeks to allow additional evidence when the proponent can prove beyond a reasonable doubt that the defendant on trial has sexually abused another child.

The legislative history of Article 38.37, section 2(b) also reveals that the legislature recognized a need to expand the type of evidence admissible in cases involving specified sexual offenses committed against children because of the nature of such crimes and the vulnerability of their victims. As the bill's sponsor noted, little evidence often exists in cases involving sexual offenses against children because the physical and emotional trauma endured by the child can result in delayed reporting. Huffman, Author's/Sponsor's Statement of Intent, Tex. S.B. 12, 83rd Leg., R.S. 12 (2013). The legislative history also mentioned that defendants often prey sexually upon children because "they tend to make poor witnesses." House Comm. on

19

Criminal Procedure Reform, Bill Analysis, Tex. S.B. 12, 83rd Leg., R.S. 12 (2013). Based on these reasons, Article 38.37, section 2(b) is rationally related to the legislature's legitimate purpose of protecting child victims of sexual predators by allowing relevant evidence of a defendant's separate sexual crimes against other children to be admissible in designated cases.

Finally, the legislative history of Article 38.37, section 2(b) also reveals that the legislature intended to bring Texas evidentiary law closer to federal evidentiary law. Specifically, the legislature intended for Article 38.37, section 2(b) to mimic Federal Rule of Evidence 413 which allows trial courts the discretion to admit evidence that a defendant committed any other sexual assault in the trial of that defendant for sexual assault. Huffman, Author's/Sponsor's Statement of Intent, Tex. S.B. 12, 83rd Leg., R.S. 12 (2013); *see* FED. RULE EVID. 413; *see also* FED. RULE EVID. 414 (allowing evidence that the defendant committed any other child molestation to be admitted in a criminal trial of a defendant accused of child molestation).[5]   However, when compared to Federal Rule 413's broad exception that allows any evidence of any sexual assault to be admissible without any mention of the proponent's burden of proof, Article 38.37, section 2(b) more narrowly construes what evidence of sexual

---

[5] Several other states also allow evidence of other sexual assaults and/or other sexual molestations of a child to be admissible at a defendant's trial for sexual assault/sexual molestation of a child. *See* ARIZ. R. EVID. 404(c); CONN. CODE EVID. §4-5 (West 2014); FLA. STAT. ANN. §90.404(2)(b),(c) (West 2014); GA. CODE ANN. §24-4-414 (2014); KAN. STAT. ANN. §60-455(c),(d) (West 2014); LA. CODE EVID. ANN. art. 412.2 (2014); NEB. REV. STAT. §27-414 (2014); OKLA. STAT. ANN. tit. 12, §2413 (West 2014); UTAH R.EVID. 404(c); VA. SUP. CT. RULE 2:413; WIS. STAT. ANN. §904.04(2)(b) (West 2014).

offenses against other children can be admissible and ensure a higher burden of proof for the proponent. *Compare* FED. RULE EVID. 413 *with* TEX. CODE CRIM. PROC. ANN. art. 38.37, §2(b) (West Supp. 2014). Indeed, unlike the federal rule, the Texas Article draws specific limitations on the type of sexual offenses possibly admissible through it and imposes an additional age limit for the complainant. TEX. CODE CRIM. PROC. ANN. art. 38.37, §2(b) (West Supp. 2014). Article 38.37 also requires that the trial court find that the State can prove that the defendant committed the other sexual offense against a different child beyond a reasonable doubt before finding the evidence's admissible. TEX. CODE CRIM. PROC. ANN. art. 38.37, §2(b) (West Supp. 2014). These differences between Article 38.37 and Federal Rule 413 demonstrate how the Texas legislature more narrowly promulgated the Article to fit its goals of protecting children while at the same time moving Texas evidentiary law closer to federal law.

Despite this stated legislative goal, appellant argues in his brief about how Article 38.37, section 2(b) differs from its previous version by allowing evidence of a separate sexual offense the defendant commits against another child to be admitted instead of just allowing separate sexual offenses commited against the charged complainant to be admissible.[6] Appellant's Br. 11-14; *compare* TEX. CODE CRIM. PROC.

---

[6] In his brief, appellant also voices concerns with Article 38.37, section 2(b) before addressing the purposes of the Article without reference to what scrutiny level he applies in his substantive due process challenge. Appellant's Br. 13-14. Appellant specifically takes issue with Article 38.37, section 2(b) for departing from the general evidentiary rule that evidence of specific instances of

21

ANN. art. 38.37, §2(b) (West Supp. 2014) *with* TEX. CODE CRIM. PROC. ANN. art. 38.37, §2(b) (West 2005). However, this change does not impermissibly infringe upon defendants' substantive due process rights because it is rationally related to all of the legitimate purposes of the law, mentioned above, and is more narrowly drawn than its model. *Compare* FED. RULE EVID. 413 *with* TEX. CODE CRIM. PROC. ANN. art. 38.37, §2(b) (West Supp. 2014).

Given that Article 38.37, section 2(b) is rationally related to multiple legislative purposes and is more narrowly promulgated than its federal counterpart, the Article does not arbitrarily or capriciously deprive defendants of their non-fundamental right to trials free from evidence of their other offenses. Appellant has not met his burden of showing that Article 38.37, section 2(b) violated substantive due process in his brief, and should this Court decide his constitutional challenge on the merits, this Court should still overrule appellant's first point of error.

---

conduct should not be used to show conformity of behavior in another instance. Appellant's Br. 13. Appellant complains that the Article injures defendants' rights because it allows juries to use evidence of a separate sexual offense that a defendant committed against another child "for any bearing the evidence has on any relevant matter, including the character of the defendant and acts performed in conformity with the character of the defendant." TEX. CODE CRIM. PROC. ANN. art. 38.37, §2(b) (West Supp. 2014). While appellant alleges that this destroys the presumption of innocence, appellant overlooks that—like the charged offense—the other admitted sexual offense that the defendant commits against another child than the complainant must be proven beyond a reasonable doubt. TEX. CODE CRIM. PROC. ANN. art. 38.37, §2-a (West Supp. 2014). The Article does not lessen the State's burden of proving beyond a reasonable doubt that the defendant committed the sexual offense charged against the complainant even though Article 38.37, section 2(b) allows the jury to use the evidence of a separate crime committed against another child for any relevant purpose. TEX. CODE CRIM. PROC. ANN. art. 38.37, §2(b) (West Supp. 2014).

## REPLY TO APPELLANT'S SECOND POINT OF ERROR

**II. Appellant failed to timely and specifically inform the trial court that he wanted to object under Rule 403 to the testimony of L.P., L.H., and J.A. and thus waived his argument that their testimony was unfairly prejudicial.**

Appellant also argues that the trial court erred by allowing the testimony of L.P., L.H., and J.A. because he claims that the probative value of their testimony was substantially outweighed by unfair prejudice. In making this argument, appellant overlooks that he failed to preserve error on this ground at trial.

### *Standard of Review*

The Court of Criminal Appeals has long held that "a trial court is entitled to broad discretion in ruling on a Rule 403 objection." *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). Reviewing courts therefore determine whether a trial court abused its "substantial discretion" when making such an evidentiary ruling. *Mechler*, 153 S.W.3d at 439.

### *Applicable Law*

Evidence is generally admissible if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401; *see* TEX. R. EVID. 402. However, even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence from its admission. TEX. R. EVID. 403.

23

When a complaining party advances an objection under Rule 403 complaining of unfair prejudice, the trial court has a nondiscretionary obligation to weigh the probative value of the evidence against the unfair prejudice of its admission. *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990); *Sanders v. State*, 255 S.W.3d 754, 760 (Tex. App.—Fort Worth 2008, pet. ref'd). A trial court considers four nonexclusive factors to determine whether the probative value of evidence is substantially outweighed its prejudicial effect: (1) the probative value of the evidence; (2) the potential for the evidence to impress the jury in some irrational but indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for that evidence. *Mechler*, 153 S.W.3d at 440; *Checo v. State*, 402 S.W.3d 440, 451 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). In making its Rule 403 ruling, the trial court is assumed to have applied the balancing test and determined the evidence was admissible even if the court does not conduct the balancing test on the record. *Sanders*, 255 S.W.3d at 760; *Caballero v. State*, 919 S.W.3d 919, 922 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd).

To preserve a complaint for appellate review, a party must timely present the trial court with an objection that advances the specific grounds of the complaint. TEX. R. APP. P. 33.1(a); TEX. R. EVID. 103(a)(1). However, this Court has held that when making an objection under Rule 403, "[a] general '403' objection […] is not sufficient to preserve error because it fails to identify for the trial court which of the

24

five distinct grounds for excluding evidence listed in the rule is being argued as a basis for exclusion." *Checo*, 402 S.W.3d at 451.

*Analysis*

## a. Appellant failed to preserve error under Rule 403.

Appellant failed to preserve error for his second point of error because he failed to timely and specifically notify the trial court of his object to the testimony of L.P., L.H., and J.A. under Rule 403 at trial. *See Checo*, 402 S.W.3d at 451 (strictly construing waiver under Rule 403 when Checo failed to specify that he objected to evidence because of its prejudicial value). As the record shows, appellant only advanced a Rule 403 objection once to the trial count, and he made this objection to testimony of B.H. at the Article 38.37 hearing (5 RR at 70). Appellant did not raise any such prejudice objection to the testimony of L.P., L.H., or J.A. at the hearing (5 RR 50, 93, 113-18). *See Montgomery*, 810 S.W.2d at 388. Thus, appellant never informed the trial court that he also wanted to object to their testimony under Rule 403 at the hearing.

Similarly, at trial, appellant never timely or specifically notified the trial court that he wanted to lodge a Rule 403 objection to the testimony of L.P., L.H., or J.A. As the record shows, before L.P. testified, appellant did object but informed the trial court that he wanted a "running objection to this sort of extraneous offense in the main part of trial just as I did during the extraneous hearing" (6 RR at 30). This objection failed to let the court know that he wanted to keep L.P.'s testimony from

25

the jury under Rule 403 since appellant did not raise that specific objection under that ground at the hearing. Appellant failed to raise any objections at all before either L.H. or J.A. testified (7 R at 31, 68). Since appellant did not notify the trial court of any Rule 403 objection to their testimony, the trial court was not aware that it needed to rule on appellant's prejudice objection at trial.

As appellant failed to inform the trial court of any Rule 403 objections to L.P., L.H., or J.A.'s testimony at the hearing or at trial, appellant failed to preserve error on this ground. Thus, this Court should overrule appellant's second point of error.

**b. Even if appellant had preserved error, the trial court would not have abused its discretion in admitting the testimony of L.P., L.H., and J.A. at trial.**

If this Court somehow construes appellant's objection under Rule 403 to B.H.'s testimony as covering the testimony of L.P., L.H., and J.A., the trial court nevertheless would not have abused its "substantial discretion" in admitting their testimony. *Sanders*, 255 S.W.3d at 760.

**i. The trial court would not have abused its discretion in admitting appellant's separate sexual offenses against L.P. had appellant objected to the evidence under Rule 403.**

Had appellant raised a 403 objection to L.P.'s testimony of his sexual abuse against her, the trial court would have not abused its discretion in admitted the evidence because the probative value of L.P.'s testimony was not substantially outweighed by unfair prejudice. Appellant's offenses against L.P. were highly

26

probative to inform the jury of how appellant's other offenses, including those against J.K.'s, came to light (6 RR at 74). L.P. testified that she warned her younger step-sisters to tell her if appellant ever touched them, and when one of them did, an investigation began (6 RR at 74). Appellant's offenses against L.P. were also probative to show how his sexual abuse of her escalated from first touching her breast, to touching her genitals with his, and finally to forcing her to perform oral sex on him (6 RR at 45-46, 50, 55-57, 59, 61-64, 65).

The probative value of L.P.'s testimony was great, but did have some potential to impress the jury because it involved appellant's sexual misconduct with his step-daughter. *See Gonzalez v. State*, No. 01-13-00901-CR, 2014 WL 7174288, at *4 (Tex. App. Dec. 16, 2014, no pet. h.) ("[A]ny evidence of sexual misconduct involving children is inherently distressing."). However, the evidence was not so distressing that it would impress the jury in an irrational way. *See Dennis v. State*, 178 S.W.3d 172, 180-81 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (holding that even though testimony of an extraneous sexual assault of a child carried emotional weight, the trial court's decision to admit the extraneous offense evidence is within the zone of reasonable disagreement). Additionally, while L.P.'s testimony took about a day to present, the State needed the evidence to put both girl's delayed outcries into context. The State also needed the evidence to show appellant's preference for young girls, to develop a pattern for appellant's behavior, and to help refute appellant's anticipated defense that J.K. fabricated appellant's sexual assault. *See Dennis*, 178 S.W.3d at 181.

27

For these reasons, the trial court would not have ruled outside the zone of reasonable disagreement had appellant raised a 403 objection to the court.

## ii. The trial court would not have abused its discretion in admitting appellant's separate sexual offense against L.H. had appellant objected to the evidence under Rule 403.

Similarly, if appellant had preserved his prejudice objection to L.H.'s testimony, the trial court would not have erred in overruling it. L.H.'s testimony describing how appellant touched her leg in a manner that made L.H. feel "weird [and] awkward" was probative to show appellant's sexual preference for teenage girls and to demonstrate appellant's grooming behavior. Her testimony was also significant in that L.H.—who had been told by L.P. to watch out for inappropriate touching—was able to take actions to get away from appellant before he escalated his behavior (6 RR at 74, 7 RR at 39). While appellant argues that L.H.'s evidence was most prejudicial because it could constitute incest with his biological daughter, appellant's act of touching L.H.'s thigh does not carry the danger of impressing the jury in an indelible way because L.H. was able to stop appellant from escalating appellant's abuse. Appellant's Br. 24; *See Dennis*, 178 S.W.3d at 180-81. Further, L.H.'s evidence was quickly presented to the jury, and the State needed the evidence to show another example of appellant's grooming behavior and his preference for teenage girls. Thus, the trial court would not have abused its discretion had appellant raised a Rule 403 objection at trial.

28

### iii. The trial court would not have abused its discretion in admitting appellant's separate sexual offenses against J.A. had appellant objected to the evidence under Rule 403.

Finally, the trial court would also not have erred had it overruled a Rule 403 unfair prejudice objection to J.A.'s evidence. J.A.'s evidence was highly probative to show how appellant brashly tried to sexually assault a teenage girl who was not a member of his family in ways that paralleled his opportunistic sexual assaults against J.K. (7 RR at 70, 77, 81). Like L.P.'s and L.H.'s evidence, J.A.'s evidence was also probative to show appellant's preference for teenage girls. While J.A.'s testimony involved how appellant was undeterred in his sexual assault of her despite the fact that she was on her period, this evidence would not have impressed upon the jury in some irrational but indelible way. J.A.'s testimony covered less than a day of appellant's trial and thus did not take much time to develop. Finally, the State needed the evidence as appellant's sexual assault on J.A. more closely resembled the opportunistic nature of his sexual assaults on J.K. Additionally, J.A.'s testimony provided the jury with an example in which appellant's sexual offense with a child was interrupted by Leslie but was never brought to the attention of police until B.H.'s outcry prompted investigation (7 RR at 87, 88, 89). Not only did the State need J.A.'s evidence to explain to the jury reasons why appellant's victims made delayed allegations of his sexual assaults, the State also presented J.A. as another child from an unstable home of whom appellant took advantage (7 RR at 89). Thus, had appellant raised an

29

unfairly prejudicial objection to J.A.'s testimony at trial, the trial court would not have abused its discretion in overruling it.

### Conclusion

Because the probative value of the evidence of L.P., L.H., and J.A. was not substantially outweighed by the danger of unfair prejudice, even if appellant had preserved error at trial, the trial court would not have erred in admitting the evidence. Thus, this Court should overrule appellant's second point of error.

### REPLY TO APPELLANT'S THIRD POINT OF ERROR

**III.  The trial court did not abuse its discretion when it denied appellant's motion for new trial without first holding a live hearing because the court could determine the merit of the issues from the record.**

In his final point of error, appellant argues that the trial court abused its discretion when it denied appellant's motion for new trial without first holding a live hearing. However, the trial court did not abuse its discretion when it denied appellant's motion without a live hearing because the court could sufficiently determine from the record that appellant's allegations of ineffective assistance of counsel were meritless. Thus the trial court did not err.

### Standard of Review

Appellate courts review a trial court's denial of a motion for new trial under an abuse of discretion standard by determining whether the trial court's decision was arbitrary or unreasonable. *Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014). A trial court abuses its discretion in denying a motion for new trial only when the

record could not support the view that the trial court's ruling was reasonable. *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006).

## Applicable Law

When ruling on a defendant's motion for new trial, the Rules of Appellate Procedure authorize a trial court to receive evidence "by affidavit or otherwise." TEX. R. APP. P. 21.7. A defendant does not have an absolute right to a hearing. *Rozell v. State*, 176 S.W.3d 228, 230 (Tex. Crim. App. 2005). The court has discretion to rule solely on sworn pleadings and affidavits without live testimony when the court can determine from the record the matters raised in the motion for new trial. *Holden*, 201 S.W.3d at 763. However, a trial court abuses its discretion when it fails to hold a hearing on a defendant's motion for new trial when the issues raised are not determinable form the record. *Holden*, 201 S.W.3d at 763; *Rozell*, 176 S.W.3d at 230. The trial court does not have to hold a hearing on a motion for new trial if conflicting facts are presented as the trial court can decide contested fact issues on affidavits. *Holden*, 201 S.W.3d at 763.

## Analysis

The trial court did not abuse its discretion when it denied appellant's request to have a hearing on his motion for new trial because the trial court could determine that appellant's allegations of ineffective assistance of counsel were without merit from the record before the court. *See Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984) (holding that to prevail on an ineffective assistance of counsel claim, a defendant must

31

show that his counsel's performance fell below an objective standard of reasonableness, and that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different). In his motion for new trial, appellant alleged that his Sixth Amendment right to effective assistance of counsel was violated by his trial counsel in four ways (CR at 199-204). Appellant alleged that his trial counsel was ineffective for failing to investigate his ex-wife for possible motives and biases against appellant, for failing to call Charles Hill, Jessica James, and Sean James as witnesses at trial, for failing to investigate whether there was a lock on the bathroom door of appellant's home, and for failing to visit appellant in jail before and during trial (CR at 201-4). The record from appellant's trial and the affidavits before the trial court sufficiently allowed the court to rule on each allegation appellant raised without a hearing.

### a. The trial court could determine from the record that appellant's trial counsel was not ineffective for failing to adequately investigation Leslie's bias and motive.

Firstly, the trial court did not abuse its discretion in denying appellant's request for a hearing because it could adequately determine from the record that appellant's trial counsel was not ineffective for failing to investigate Leslie, appellant's ex-wife. The record established that trial counsel introduced evidence of Leslie' bias against appellant and possible motivation at trial and that appellant failed to advance any

32

evidence in his motion for new trial that would have helped him meet his burden to show that his counsel was ineffective.

As the evidence revealed at trial and appellant's counsel affirmed in its affidavit, defense "trial strategy was to portray the ex-wife, [Leslie], as a vindictive cheating spouse who emotionally and mentally manipulated and convinced her daughters and family friends to make false sexual assault allegations against [appellant] so that he would be effectively removed from their lives forever" (CR at 223). Counsel attested that he strategically conducted his cross-examination into the biases of state's witnesses after conversing with appellant and reviewing information obtained by a private investigator (CR at 225-26). Additionally, appellant also informed the jury regarding his suspicions about his ex-wife (CR at 225; 9 RR at 143). From the evidence presented at trial, the court could determine that counsel did investigate and bring to the jury's attention the possible motive and bias Leslie held against appellant.

Further, the trial court did not err in denying appellant's motion without a hearing because appellant did not alleged any new evidence that his counsel should have found by further investigation that was not introduced at trial. To meet his burden of showing ineffective assistance of counsel for failure to investigate, appellant had to state what his counsel's investigation should have revealed. *See Jordan v. State*, 883 S.W.2d 664, 665 (Tex. Crim. App. 1994) (holding trial court did not err by denying a request for a hearing on motion for new trial regarding alleged ineffective assistance in failing to investigate because appellant's affidavit did not state what

33

further investigation would have revealed). Appellant did not allege any new allegations of Leslie's bias and motive against him in his motion for new trial that had not been brought before the jury (CR at 201-02). As appellant had the burden to present the court with additional evidence that his counsel should have revealed had his investigation been more thorough, appellant failed to meet his burden and the trial court properly denied appellant's motion without a hearing.

Because appellant did not meet his burden and the evidence in the record established that counsel adequately investigated the biases of the state's witnesses, the trial court did not err in denying appellant's motion on this ground.

**b. The trial court could determine from the record that appellant's trial counsel was not ineffective for failing to call Charles Hill, Jessica James, and Sean James at trial.**

Secondly, the trial court did not abuse its discretion in denying appellant's request for a hearing because it could adequately determine from the record that appellant's counsel was not ineffective for failing to call Charles Hill, Jessica James, and Sean James to testify at trial. As the record established, two of the witnesses testified for appellant at trial and counsel had strategic reasons for not pressing the third to appear to testify.

While appellant claimed that his trial counsel was ineffective for failing to call Hill and James as witnesses, the trial court knew from presiding at appellant's trial that Hill and James did testify (9 RR; CR at 224). Appellant's counsel cannot be

34

ineffective for failing to call a witness that actually did testify at trial. Thus the trial court did not abuse its discretion in finding this allegation meritless without holding a hearing.

In regards to the witness that did not testify at trial, counsel explained to the trial court that Sean James "elected not to testify for [appellant] due to 'work and transportation' difficulties" (CR at 225). Appellant did not establish that James would have been available to testify. Counsel further informed the trial court that James's choice not to testify was a relief to counsel who feared that James might have opened himself up to criminal prosecution and might have had to assert his Fifth Amendment right against self-incrimination if he took the stand (CR at 224-25). Counsel strategically believed that James would not be an effective witness and might reflect poorly on appellant if he had testified (CR at 225). Counsel's explanation of the possible issues that may have arisen had Sean James been available to testify established that counsel did not press James to testify based on sound trial strategy and that appellant was not harmed like he could have been had this witness testified.[7] *Strickland*, 466 U.S. at 687, 694.

Because trial counsel called two of the witnesses appellant mentioned in his motion for new trial and had sound, strategic reasons for not calling the third, the trial court could determine from the record that counsel was not ineffective on this

---

[7] Counsel also explained in his affidavit that he did not call any witnesses that had felony criminal records (CR at 224).

35

ground. Thus, the trial court did not abuse its discretion in denying appellant's request for a hearing.

### c. The trial court could determine from the record that appellant's trial counsel was not ineffective for failing to investigate the existence of a lock on the bathroom door.

Thirdly, the trial court did not abuse its discretion in denying appellant's request for a hearing because it could adequately determine from the record that appellant's counsel was not ineffective for failing to investigate the presence of a lock on the bathroom door in appellant's former home. As the record established, appellant's trial counsel denied appellant's allegation that he failed to investigate whether there was a lock on the bathroom door (CR at 226). Counsel swore in his affidavit that he had a private investigator review the matter despite the fact that counsel viewed the matter as a collateral issue (CR at 226). Nevertheless, counsel raised the issue of the door lock at trial and presented it to the jury as a factual issue central to one of appellant's extraneous offenses against J.K. (CR at 226; 8 RR at 42; 9 RR at 12, 186-87). Because the trial court could determine from the record that counsel indeed investigated the collateral matter, the trial court did not err in denying appellant's motion for new trial without holding a hearing on this issue.

**d. The trial court could determine from the record that appellant's trial counsel was not ineffective for failing to visit appellant in jail before and during trial.**

Finally, the trial court did not abuse its discretion in denying appellant's request for a hearing because it could adequately determine from the record that appellant's counsel was not ineffective for failing to adequately communicate or visit appellant before and during trial. In counsel's affidavit, he attested that he met with appellant in early to mid-2013 to review the case facts and prepare for trial (CR at 226). Counsel described this meeting as "extensive" (CR at 226). In addition, counsel informed the trial court that counsel communicated with appellant in detailed letters responding to his issues and concerns (CR at 226). Counsel acknowledged that appellant "want[ed] to frequently review previously explored and discussed trial issues and matters, but offered no new concerns or material for consideration" (CR at 226). Counsel explained to the court that since "[t]he case facts and witness identification did not change" after meeting with appellant, he did not meet with appellant further to recover ground already trodden in their trial preparation (CR at 226). Further, other than making a conclusory allegation of prejudice, appellant failed to show any prejudice in his motion for new trial. *See Cooks v. State*, 240 S.W.3d 906, 912 (Tex. Crim. App. 2007) (holding that a conclusive allegation does not establish reasonable grounds to believe that trial counsel was ineffective). Because the trial court could determine from the record before it that appellant could not meet his burden of

showing that his trial counsel was ineffective for failing to visit and communicate with him, the trial court did not abuse its discretion in denying appellant's motion for new trial without a hearing.

### e. The trial court did not err in overruling appellant's motion for new trial without conducting a live hearing because the trial court could make credibility determinations from the record and the affidavits before it.

Finally, appellant alleges that the trial court erred in denying his motion for new trial without first holding a live hearing because appellant believes the trial court should have abused its discretion by not allowing appellant to cross-examine his trial counsel on matters controverted in their affidavits. Appellant relies on *Morse v. State*, a case from the Ninth Court of Appeals, for this argument. *Morse v. State*, 29 S.W.3d 640, 642 (Tex. App.—Beaumont 2000, no pet.); Appellant's Br. 33. However, appellant ignores that Court of Criminal Appeals has rejected the holding in *Morse* as incompatible with its own holding that trial courts can decide conflicting factual issues on affidavits alone and do not abuse their discretion when deciding not to hold a hearing. *Holden*, 201 S.W.3d at 763. Since the affidavits and the record allowed the trial court to decide the issues appellant raised in his motion for new trial and to determine the credibility of appellant and appellant's trial counsel in their affidavits, the trial court did not abuse its discretion in denying appellant's motion for new trial without holding a hearing.

*Conclusion*

As every allegation that appellant raised in his motion for new trial could be determined by the record, the trial court did not abuse its discretion in overruling his motion without holding an evidentiary hearing. As this Court can see, the record before the trial court allowed it to sufficiently determine the merit of appellant's ineffective assistance of counsel claim and judge the credibility of the affidavits. As such, this Court should overrule appellant's final point of error and affirm his conviction.

## CONCLUSION

The State of Texas respectfully urges the Court to overrule appellant's points of error and affirm his conviction.

DEVON ANDERSON
District Attorney
Harris County, Texas

/s/ *Carly Dessauer*

CARLY DESSAUER
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002
(713) 755-5826
State Bar No. 24069083
dessauer_carly@dao.hctx.net
curry_alan@dao.hctx.net

## CERTIFICATE OF COMPLIANCE

The undersigned attorney certifies that this computer-generated document has a word count of 10,113 words, based upon the representation provided by the word processing program that was used to create the document. TEX. R. APP. P. 9.4(i).

/s/ *Carly Dessauer*

**CARLY DESSAUER**
Assistant District Attorney
Harris County, Texas
 1201 Franklin, Suite 600
Houston, Texas  77002
(713) 755-5826
State Bar No. 24069083

## CERTIFICATE OF SERVICE

The State will serve a copy of the foregoing instrument to appellant's attorney

though TexFile:

Maite Sample
Attorney at Law
405 Main Street, Suite 950
Houston, Texas 77002
maite.m.sample@gmail.com

/s/ *Carly Dessauer*

**CARLY DESSAUER**
Assistant District Attorney
Harris County, Texas
 1201 Franklin, Suite 600
Houston, Texas  77002
(713) 755-5826
State Bar No. 24069083

Date:  January 6, 2015